## In re MERCHANDISE IMPORTED BY HOIT.

(Circuit Court, D. Massachusetts. August 19, 1896.)

No. 458.

CUSTOMS DUTIES—TOILET ARTICLES—EAU DE QUININE.

Pinaud's Eau de Quinine Tonique, a toilet preparation used as an application to the hair, consisting, 67 per cent. of alcohol, $18/100$ of 1 per cent. of odoriferous resin, sulphate of quinine, and essential oils, and the balance of water, is dutiable under Act 1894, par. 61, which includes "preparations used as applications to the hair, mouth, teeth, or skin, such as cosmetics, dentifrices, pastes, pomades, powders, and all toilet preparations," and not under paragraph 7, which includes "alcoholic perfumery, including cologne water, and other toilet waters, and alcoholic compounds not specially provided for," nor under paragraph 239, which includes "all compounds or preparations * * * of which distilled spirits are a component part, not specially provided for."

Sherman Hoar and Frederick P. Cabot, for the United States.

Alexander T. Ketchum and Ezra Thayer, for importer.

PUTNAM, Circuit Judge.   This proceeding relates to an importation known as "Pinaud's Eau de Quinine Tonique." It is essentially a proprietary preparation, although not medicinal, and therefore not within paragraph 58 of the act of 1894.   For some years it has been a well-known article of commerce.   On an appeal from the collector, the board of general appraisers classified this importation as within paragraph 61 of the act of 1894, which is as follows:

"Preparations used as applications to the hair, mouth, teeth, or skin, such as cosmetics, dentifrices, pastes, pomades, powders, and all toilet preparations, and articles of perfumery, not specially provided for in this act, forty per centum ad valorem."

The collector has, as provided by law, applied to this court for a review of the decision of the board of general appraisers; claiming that the importation is dutiable under paragraph 7 of the act of 1894, or under paragraph 239.   Paragraph 7 reads as follows:

"Alcoholic perfumery, including cologne water and other toilet waters, and alcoholic compounds not specially provided for in this act, two dollars per gallon and fifty per centum ad valorem."

Paragraph 239 reads as follows:

"On all compounds or preparations (except as specified in the preceding paragraph of the chemical schedule relating to medicinal preparations, of which alcohol is a component part), of which distilled spirits are a component part of chief value, not specially provided for in this act, there shall be levied a duty not less than that imposed upon distilled spirits."

The United States also make a suggestion that, if the importation in issue is not covered by either of the paragraphs on which they rely, it comes within the provisions touching unenumerated articles; but those provisions plainly have no relation to this case.

We are satisfied with the testimony of Mr. Carmichael that the merchandise contains, of absolute alcohol, substantially 67 per centum, by volume, at 60 degrees Fahrenheit; that the solid residuum, amounting to about $18/100$ of 1 per centum, consists principally

of an odoriferous resin, having a fragrance similar to that of gum benzoin, a minute trace of sulphate of quinine, and also a very small percentage of essential oils, the remainder of the compound being water. The preparation is offered and recommended to the public according to the labels on the bottles containing it, as shown by the following evidence:

"Q. Now, I wish you would read to us the label that is on the outside of this bottle. Ans. A little of this wash, applied to the roots of the hair, night and morning, with a sponge, will be found excellent for removing scurf, strengthening the hair, and to prevent the same from falling out. It also renders the hair brilliant and soft, and it has a delicious and refreshing perfume. That is the English 'label,' and the translation of the French is, 'To the basket of flowers; hygiene of the head; eau de quinine water as tonic; excellent against dandruff; to fortify the hair and prevent it from falling out; to give it brilliancy and suppleness; it frees the hair from corrosive action of perspiration, and leaves an agreeable and invigorating odor.' "

We are satisfied by the testimony of various large dealers appearing in the record, including that of Mr. Burnett, who is the principal witness for the United States, if not the only one, that, although the compound contains an agreeable perfume, it is not perfumery, in any sense of the word, whether it be interpreted according to its popular, commercial, or statutory meaning, but that, on account of the coloring matter and oils which it contains, it stains, and cannot be used as such. The agreeable odor is purely incidental, the same as found in thousands of other articles which are in no sense perfumery, but which are nevertheless thus made attractive for common use. Taking the testimony of Mr. Burnett, an extensive dealer and manufacturer; of Mr. Utard, agent of Pinaud in the United States; of Mr. Froelich, who for several years has had charge of that department of the business of Stern Bros., widely known as retailers in the city of New York, which includes Pinaud's Eau de Quinine Tonique; of Mr. Fuller, representing extensive dealers, manufacturers and importers in various toilet articles, including this; and of Mr. Weed, buyer of this class of merchandise for W. F. Schiefflin & Co., like dealers,—all of whom unite in sustaining the importer on these particular points of fact, we are satisfied that the importation in issue has never been known commercially, or in any sense, as perfumery, but has always been known commercially, and in every sense, as a preparation used as an application to the hair, and that it is such inherently. But this alone would not make it such an application within the meaning of paragraph 61, as to which the rule of interpretation ejusdem generis is made imperative by the words "such as cosmetics, dentifrices, pastes, pomades, powders." Not every application to the hair is within that paragraph, but only those which are specified there, or are akin thereto. But there can be no question, on the evidence of some of the witnesses we refer to, that this importation is also a "toilet preparation." It is clearly intended for self-use at the toilet, and is thus used in the way in which articles commonly known as toilet preparations ordinarily are. It is therefore, to this extent, plainly within the letter and spirit of paragraph 61. This conclusion of fact harmonizes with the findings

of the general appraisers.    But they did not negative paragraph 7, which enumerates "alcoholic perfumery, including cologne water and other toilet waters."    We have already shown that this is not perfumery, in any ordinary sense of the word, or inherently.    The language of paragraph 7, however, by its method of using the word "including," broadens the word "perfumery," so that, in its statutory sense at this place, it includes alcoholic toilet waters.    There can be no doubt, moreover, that this expression "toilet waters," in connection with the word "alcoholic," is specific, to such an extent that anything contained in paragraph 61 must be regarded, with reference thereto, as generic.    Therefore we have been compelled to consider whether the importation comes within that expression.    Mr. Burnett, of whom we have already spoken, testified as follows:

"Q. What is the difference between toilet waters and toilet preparations? Ans. Toilet preparations are anything that is used for the toilet.  Toilet waters are used in combinations and in the bath.  Q. Would a toilet preparation include toilet waters?  Ans. Yes, sir; I should think so.  Q. But toilet waters include articles that are used chiefly for the bath?  Ans. For the bath and complexion; for the person directly."

In some portions of Mr. Burnett's testimony he appears to classify this importation as toilet water.  But notwithstanding this, and notwithstanding the expression "toilet waters" is somewhat ill defined, there can be no reasonable doubt that the extract we make from his testimony is in accordance with the fact.    Inasmuch as there is no evidence in the record that this importation is used in the bath, or as toilet waters are ordinarily used, and as, also, the evidence cited negatives this suggestion, we are satisfied that it is not toilet water, in either the commercial or popular sense; and there is nothing in the statute or in its history to indicate that this expression in paragraph 7 is used with any statutory effect differing from the commercial or ordinary sense.    Thus, the proofs in the record show that the importation is a preparation used as an application to the hair, and a toilet preparation, and negative any claim that it is alcoholic perfumery, or alcoholic toilet water.    There can be no question that the article in issue is an "alcoholic compound," within the general meaning of those words; and the testimony also shows that it is a preparation "of which distilled spirits are a component part of chief value," within the general meaning of that expression.    There is also a suggestion that this preparation is colorable.    What the effect of such a suggestion would be, if sustained, would depend upon many circumstances which we need not discuss, as it is not supported by any direct proof in the case, nor by any proof which the court would be justified in regarding.    It is true that the words "quinine" and "tonic," as applied to this preparation, may be misleading.    However, there seems to be a trace of sulphate of quinine in it; and among the other merits claimed for it by its importer are those of strengthening the hair, and of preventing it from falling out, which perhaps render it a tonic, in the sense in which the word is used by the trade dealing in articles for the toilet.    Taking the entire record together, there is nothing to justify the court in even

suspecting that the article in question is not honestly made and sold wholly and specially for the purposes described in the abstract from the labels already recited. or in holding that it is in any way a colorable or simulated preparation.

These facts thus appearing from the proofs in the case, the law applicable to them seems to us entirely clear.    Paragraph 7 applies to no alcoholic compounds except those not specially provided for elsewhere in the act; and paragraph 239, with reference to compounds and preparations of which distilled spirits are a component part of chief value, has the same limitation.    The expressions "alcoholic compounds," and "compounds or preparations  *  *  *  of which distilled spirits are a component part of chief value," are strictly generic, and therefore are clearly so limited by the words "not specially provided for in this act" as to exclude everything elsewhere in the statute of a specific character or description.    It is too clear for argument that "preparations used as applications to the hair," and "toilet preparations," as collated in paragraph 7, represent subdivisions, and are specific, as compared with the generic designations found in paragraphs 7 and 239.    This is so entirely plain that we need not dwell upon it.

The United States have brought to our attention paragraph 77 of the act of 1890, and argue that, inasmuch as that paragraph contained the words "and tonics," and the importation in issue is described as a tonic, and as, also, paragraph 61 of the act of 1894 omits the words "and tonics," congress, by implication, excluded merchandise of the class now in issue from the classification contained in paragraph 77.    Paragraph 77 reads as follows:

"Preparations used as applications to the hair, mouth, teeth, or skin, such as cosmetics, dentifrices, pastes, pomades, powders, and tonics, including all known as toilet preparations, not specially provided for in this act, fifty per centum ad valorem."

We have already referred to the fact that the importation in issue may be a tonic, in the sense of the trade dealing in articles to which paragraph 77 of the act of 1890 and paragraph 61 of the act of 1894 relate, which fact lays a basis for the argument of the United States in this connection, but the reconstruction of the paragraph does not justify us in accepting their proposition.    It is true that paragraph 61 omits the words "and tonics," but it omits also the words "including all known as toilet preparations," and inserts in lieu of the latter the words "and all toilet preparations, and articles of perfumery," followed by the words "not specially provided for."    Looking at all these changes, we can only say that the impression we gather from them is that the words "and tonics" were stricken out on account of their evident indefiniteness, and of the uncertainty of their meaning in this connection, and wholly for the purpose of securing clearness in phraseology; and we are also of the impression that the words "and all toilet preparations, and articles of perfumery" were inserted in order to harmonize all parts of the paragraph, and thus they somewhat broadened it.    But we are of the opinion that we need not elaborate this, because paragraph 61, as it now stands, is too positive, so

far as the case at bar is concerned, to permit of its being construed away by any theories arising from the changes in phraseology to which we refer,—theories which, no matter how carefully studied, no court can with certainty accept as correct. Indeed, to pass from the question before us to the theories underlying these changes is not to pass from what is uncertain to what is certain, but the reverse.

We have also had pressed upon us the general policy of congress to bring the customs laws into harmony with those laying taxes on domestic products,—a policy which no doubt exists, and which is indicated by that portion of paragraph 239 cited. We would feel the force of this argument in a case of great doubt, but we are not justified in undertaking to carry out a policy, no matter how generally indicated, to the extent of twisting an enactment from its clear language. It is not an uncommon thing for congress to forget in one enactment its general policy as declared in many others, or even to do this in different parts of the same statute. We have been referred to many decisions, and also somewhat to the history of the legislation in question in connection with the practice and rulings of the department and the departmental officers; but we have not found enough in them to assist us in the case to any material extent, or to cause us to hesitate in our conclusions. Judgment will be entered in due form against the United States.